Hoffman, J.
(After stating the facts of the case.) It is not denied, on the part of the plaintiffs, that the note upon which this action was brought, was feloniously taken from the public mail at or near Charleston, in South Carolina, on or about the *571 22d of February, 1827, after it had been deposited therein, for the purpose of being remitted to New-York. It is equally clear and undisputed, that S. & M. Allen, the persons to whom the note was remitted, were its true owners, and they, in the name of the Phoenix bank, interpose this defence for the purpose of protecting their own rights. The defendants upon the record, are indifferent as to the result of this action, having been indemnified by S. & M. Allen against its consequences. Being, however, the makers of the note, and having received value for it, the defendants must, of course, pay its amount to somebody ; and it is of no importance to them whether payment is made to the plaintiffs, or to. S. & M. Allen.
The defendants, therefore, are not, as to its practical results, interested in the event of this suit, but S. & M. Allen are, .and the first question is, whether they can be permitted to interpose this defence in the name of the bank.
It is a rule of law well settled, that possession of a promissory note, endorsed in blank, or payable to bearer, is prima fade evidence of ownership, and if the person or party having the possession, came by it bona fide, for a valuable consideration, in the course of his business, and without any accompanying circumstances of suspicion to put him upon his guard, or excite inquiry, he shall hold the note against the original owner, even if it had been lost or stolen. But it is equally well settled, that if the holder of the note received it under circumstances which ought to put a man of ordinary prudence upon his guard, or, at least, upon inquiry; or if he came into a possession of it without having parted with any thing of value, or without having given some new credit in exchange for the note, then the maker may, under proper equitable circumstances, setup a defence against his right of recovery. [Bay v. Coddington, 5 Johns. Ch. Rep. 56. Gill v. Cubitt, 3 Barn. and Cresw. 466. and the cases there cited.]
In the case of Gibson v. Taiman, decided in this court, it was held, “ that if the holder of a note obtains it by fraud, he cannot main- “ tain an action upon it against any of the parties to it. He “ must aver and prove that the note was transferred to him, and “ though his possession of the note is prima facie evidence of the *572 “ transfer, yet if the defendant can show that the plaintiff obtain- “ ed the note by his own fraudulent act, he has a right to defeat “ t^ie acti°n on that ground, although he may be liable to pay the “ note to the true owner.”
The principle of that decision is applicable to this case. The plaintiffs here must recover, if they recover at all, by the strength of their own title, and if they have no right to the note, as against the claims of the original owners, they cannot recover upon the ground that the defendants are liable to somebody. The main question, then, to be decided, is, whether the plaintiffs a/re bona fide holders of this note; whether they have paid any value for it, or given credit upon the faith of it, or incurred any new responsibility by reason of their possessing it. That they came into the possession of this note in the ordinary course of their business, and without any circumstance to cast the slightest suspicion, in their minds, upon the title of those who made the deposit, cannot be denied; and the point upon which this case must turn, will depend upon the question of consideration entirely.
It appears from the evidence, that Prime, Ward, King & Co., at the time when the note was deposited, were creditors of the hank to a considerable amount, and have continued to be so since. They have at all times since the deposit, had funds in the Fulton Bank, subject to their order, to an amount far exceeding the amount of this note, and the plaintiffs cannot, therefore, by any possibility, be prejudiced by the claims of S. & M. Allen, unless Prime, Ward, King & Co. could recover the amount of this deposit of them.
It cannot be successfully contended on the part of the plaintiffs, that they, at the time when the note was received in deposit, parted with any thing of value in exchange for it, or that they gave any new credit to Prime, Ward, King & Co., upon the mere faith of the note, or that they have, at any time, withdrawn the amount. For, if those who made the deposit, had afterwards drawn out the money from the bank, there can be no doubt, that in such a case, the plaintiffs would be treated as bona fide holders for a valuable consideration, and entitled to recover. But the fact *573 is not so. P., W., K. & Co. have not withdrawn their money from the hands of the plaintiffs ; but a sum remains there now, more than sufficient to indemnify them, and which they have a right to retain, unless they are concluded by some act of their own.
When the note in question was deposited with the Fulton Bank, they received it voluntarily of P., W., K. & Co., and gave them credit for a like amount in their books. It will be observed, that the plaintiffs were not bound to receive this note in deposit, or as payment of any antecedent debt, and they might have refused to receive any thing but cash. The note was, then, merely deposited with the plaintiffs in the usual course of business, for collection ; and the question is, whether their own acts, or the credit given to P., W., K. & Co., in their own book, and in the books of the bank, shall be held as conclusive evidence, that the plaintiffs were indebted to them to the amount of thej credit. If this be so, then beyond all doubt, the plaintiffs have givertea^neio credit upon the faith of the specific note, and may be prejudiced to the full extent of its amount, by their liability over to Prime, Ward, King & Co.
I cannot allow this potential effect to the mere act of giving credit upon the hooks of the hank, or those of their customers ; and I do not admit that the plaintiffs would have been concluded by any such entries. It may be, that entries made by banks upon the books of their customers, are considered by their officers as conclusive and irreversable: but the law does not look upon these acts with the same stem eye. The entry, it is true, being made by the bank, may be conclusive as to amount, where money has been deposited ; but not so in a case where the bank receives nothing of value, except in particular cases hereafter tobe noticed. This note, when deposited, was treated by the plaintiffs as a representative of fifty dollars, and they, therefore, gave credit to P., W., K. & Co. on their hooks, for a like amount. But when the note was presented for payment, the makers refused to pay it, upon the ground, that its true owners were not its holders. The plaintiffs, at the time of this refusal, had an open account with P., W., K. & Co., and might have erased the credit previously given, or have entered a like sum to their debit, by which means these accounts would have conformed to the truth of the case.
*574 In the case of Garland v. The Salem Bank, [9 Mass. R. 408.] the endorser of a promissory note, being ignorant that by the rules °f law, he was not bound to pay the note for the want of a proper demand of the maker and notice to himself, -paid the amount of it to the defendants, with whom it had been left for a collection by the holder, and the bank passed the money to the credit of the holder on their books, as so much money deposited by him. Three days thereafter, the endorser discovered bis mistake, and that the amount of the note had not been paid over to the holder in any other way, than by its having been passed to his credit on the books of the bank. He thereupon demanded the amount back again; but the bank refused to comply with his demand, and subsequently paid the money over to the holder who deposited the note, upon his check.
Upon action brought by the endorser for money had and received, it was held tjj^tThe note had been paid by mistake by the endorser, under a misapprehension of his rights; that the entry to the credit of the holder, was not conclusive upon any of the parties, and that the bank might have corrected their accounts after the mistake was discovered. The endorser, therefore, had a verdict for the amount of the note. In this case óf Garland v. The Salem Bank, it was contended, that, the payment by the endorser to the bank, and the transfer to the credit of the holder, who made the deposit, amounted to an effectual and irrevocable transfer, according to the course of bank business.. The court,' however, considered that the mere act of giving credit on the books of the bank, under the circumstances -of the case, did not amount to such a transfer, and the bank could have successfully resisted an action brought by the person in whose favour the credit was made.
The principle of that case is applicable to this, and shows, that the credit given by the Fulton Bank to Prime, Ward, King & Co. was not conclusive ner" irreversible. -It was, as it stood, evidence prima facie against them, but not conclusive.
This view of the subject raises the question, whether Prime, Ward, King & Co., could recover the amount of this deposit of the plaintiffs, and whether they may not recover for the benefit of *575 Prime, Ward, King & Co. It will be observed, however, that the Fulton Bank reposes upon the strength of its own title, and the plaintiffs do not claim to be the mere agents of Prime, Ward, King & Co., or to sue for their benefit. The plaintiffs, in fact, put their right to recover upon the exclusive ground, that the credit given to their customers in their book, is conclusive upon them, and that, therefore, they are holders for a valuable consideration. As I view the subject, the plaintiffs are under no such responsibility. They received the noteas the bankers of P., W., K. & Co., and for their accommodation. In that character they presented the note to the defendants, and payment being refused, they could return the note to P., W., K. & Co.
If the plaintiffs had taken a forged check in the name of a dealer, drawn upon themselves by mistake, and had passed the amount to the credit of another customer, it might have made a different case ; for there the law might 'cast upon them the responsibility of knowing the handwriting of the person who made the check. Bankers are supposed by the law, to be acquainted with the signatures of their correspondents and customers, and all the consequences of mistake in such cases are cast upon them. So in cases where their own notes, or notes purporting to be their own, are presented at the counter of a bank for payment: there the law presumes that the officers of the banks know their own paper, and can discriminate between spurious and genuine notes. If they cannot, who can 1 If they receive a forged note as a genuine note of their own issuing, they must sustain the loss. [Bank of the United States v. The Planters’ Bank of Georgia, 10 Wheaton p. 333., and the cases there cited.] The rules applicable to that class of cases, however, do not apply here, as I apprehend. The law does not throw upon these plaintiffs any peculiar responsibility, and theirentry upon the customer’s book, although prima facie, is not conclusive evidence against them.—If P., W., K. & Co. were to" bring an action against the Fulton Bank for the amount of this deposit, and were to exhibit the bank-book in evidence, then the bank would be at liberty to show-all the circumstances of the transaction and that payment of the note, when it was presented to the Phoenix Bank, was refused. It *576 is said, that it already appears, that those who deposited the note are innocent and bona fide holders, and that a controversy with them on the part of the plaintiffs would be unavailing. In reply, it may be observed, that there is no proof now before the court which establishes that fact. We have nothing upon that point, except the evidence of Mr. Ward, and it might be that on a proper occasion, S. & M. Allen could show the circumstances under which the note was taken by P., W., K. & Co.
If the credit given to those who deposited the note, is conclusive against the bank, it is conclusive upon the ground, that an entry in the bank-book is iinal, as between the bank and its customer ; that it is an act done which can never he remedied, a step taken which cannot be retraced. Suppose the robber himself was the person who made the deposit: could he by this indirect means, possess himself of money which he could not obtain directly 11f the robber were to sue the defendants, they might refuse to pay him and show his w'ant of title;—and can it be, that by the mere act of placing the note in a bank, as a deposit, he can thereby securely enjoy the fruits of his felony 1 This statement, to my mind, carries with it the proper answer. At all events, in a suit against them, after the fact is established, that the note in question was the property of 6. & M. Allen, and that it was stolen, P., W., K. & Co. would be compelled to show the manner in which they became possessed of it. It may be they took it of a stranger without enquiry, and without due caution ; for it is said, they know not from whom the note came to them. It may be that they received it of Gates & Co. for collection merely, and have never been prejudiced. By this means, the note will be traced back to the robber, and if no person can show himself to be a bona fide holder of it, in the legal acceptation of the term, then there can be no recovery against the rights of the true owner.
It being established, that the plaintiffs are not such holders of the note, as can recover by the strength of their own title, it follows that this defence may be set up by the Phœnix Bank. It certainly may, under the circumstances of this case; for here S. & M. Allen appear and interpose their just rights. This is a suffi *577 cient justification of the bank, and authorizes them to refuse pay- , *• •' merit. We may, however, go further. It is true, the Phoenix Bank can have no preference, as to whom they will pay the amount of the note, since they have promised to pay the holder. Nevertheless, they are under no obligation to pay any person, who is not a bona fide holder. If they could show that the note was stolen or lost, and that the holder of it came into possession of it without paying value for it, in any sense of the word, they would be justified in refusing payment. They ought to withhold the money from the person, who had no just title to it, and become trustee, or fiduciaries for the real owner, whenever he may appear By this means, no injustice would be done, and the rights of innocent persons would he best preserved.
Under this view of the subject, as there must be a new trial, it is not necessary to examine the other points made by the counsel for the defendants. But, in regard t.o the second and third points made by them, I do not consider post-notes, issued by a bank, as subject to all the technical rules attached to ordinary bills of exchange and promissory notes. Post-notes are intended to circulate like other bank notes, after they become due, and are treated as such for all convenient purposes. True it is, they are payable to order, and must be endorsed to give them negotiability. In this case, the note was endorsed by Grosvenor, the payee, in blank, and it was payable 60 days after date, on demand. When it became due, the makers were bound to pay it, at whatever period of time (within the statute) it might be presented. As between a bona fide holder and themselves, they had no equity to set up by way of defence; and it is a misapplication of the rule relating to notes over due, to apply it to a case like the present one. He, who takes a note over-due, takes it, it is said, subject to the equities existing between the original parties. And who are the original parties in this case 1 The Phoenix Bank and Grosvenor—the makers and the payee. And what equities are there existing between these parties, which the defendants can set up 1 None whatever. The note, when endorsed by Grosvenor, had perfect negotiability, and could afterwards pass by mere deli *578 very. The names of all endorsers after him could be erased, without injury to a perfect right against the makers.
Without noticing the first point made by the defendants, I am of opinion, that the second and third points, on which their application for a new trial rests, cannot be sustained; but upon the fourth, I consider the application well founded. I do not view the plaintiffs as bonafi.de holders of the note for a valuable consideration, as the proof now stands; and as they cannot recover until that be shown, there must be a new trial.
New trial granted.
[Ward and Hoyt, Att’ys for the plffs. Foot and Kent, Att’ys for S. & M. Allen.]
Vide McLaughlin v. Waite, 5 Wend. R. 404.
Mote.—This action was finally abandoned by the plaintiffs, and the cause was never again brought to trial.