PLANO MANUFACTURING COMPANY, Appellant, v. B. FARRELL.

**Consideration:** PARTIAL FAILURE: *Jury question.*  Defendant, who had bought of plaintiff a binder, with the usual warranty and agreement, on notice, to put it in order, if it did not do good work, and had given therefor his two notes, gave a new note, and, at the same time, received from plaintiff said two notes and a writing reciting that, in consideration of defendant renewing said two notes, plaintiff agreed to put the binder in good order before the harvest of that year, and defendant agreed "to render friendly assistance." Plaintiff repaired the reaper before the harvest, and defendant used it, and made no further complaint or demand on plaintiff, though in an action on the note (the consideration of which, as plaintiff contended, was the surrender of the two notes, and, as defendant contended, was the agreement to put the binder in good working order before the harvest) he testified that the binder did not work as well after as before the repairs, and that it was not worth anything as a binder.  *Held,* under the Code there may be a partial recovery upon partial failure of consideration, and the court was not warranted in holding that the written agreement was the sole consideration of the note, but should have left to the jury to determine whether the surrender of the two notes was a part of the consideration, and, if the agreement formed a part of the consideration, whether plaintiff had failed to perform it.

DEEMER, J., dissenting.

*Appeal   from   Kossuth   District   Court.*—HON.   W.   B. QUARTON, Judge.

WEDNESDAY, FEBRUARY 7, 1900.

ACTION for judgment upon a promissory note executed by the defendant to the plaintiff. The defendant answered in four counts. In the first, he admits the execution of the note, and alleges that the consideration therefor has wholly failed. In the second, he alleges, in substance, that the note was given in renewal of two other notes for a harvester and binder purchased from plaintiff under a written warranty; that the machine was not as warranted, and was of no value; and that defendant kept it at the instance of the plaintiff, and upon its agreement to make the machine work well, which plaintiff has failed to do. In the third, he alleges that the consideration for the note was that the plaintiff would put the machine in good working order, which it has failed to do, wherefore the note is without consideration. In the fourth count the defendant says that he executed the note, and delivered it to W. N. Smith, agent of plaintiff; that, as inducement thereto, said Smith, on behalf of plaintiff, made and delivered to defendant the following written agreement, to-wit: "Emmetsburg, Iowa, April 21, '94. In consideration of B. Farrell renewing his notes, No. 772, 846-7, to the Plano Mfg. Co., they thereby agree to put the said B. Farrell's binder in good working order before the harvest of 1894,—the trouble being, the said binder misses bundles; and the said B. Farrell agrees to render friendly assistance. The Plano Mfg. Co., by W. N. Smith, Collector. B. Farrell." He alleges that he gave said note, relying on said agreement, and that Smith had authority to make the same; that the plaintiff has wholly failed to carry out said agreement, and that, if in fact Smith did not have authority to make the same, the note was obtained by fraud; and that by accepting the settlement made by Smith, and said note, the plaintiff ratified said acts of Smith. Plaintiff, in reply, avers that the writing was obtained by defendant's falsely representing that the machine was not a good one; that said

agreement was not the consideration for the note in suit, but that the surrender of two other notes was the consideration; that defendant failed to comply with the warranty that he had on said machine, and abandoned the same, and therefore plaintiff was under no obligation to give said writing; that it was without consideration; and that Smith had no authority to give the same. At the conclusion of the evidence, each party moved for a verdict. The motion of the plaintiff was overruled, and the motion of the defendant overruled, except as to the first ground thereof, namely, that the defense set up in the fourth count of the answer had been established, and upon this ground it was sustained. Verdict and judgment were rendered accordingly, and the plaintiff appeals.— *Reversed.*

*Clark & Cohenour* and *Sullivan & McMahon,* for appellant.

*E. V. Swetting* and *T. F. McCue,* for appellee.

GIVEN J.—I.    Prior to the harvest of 1891 the defendant purchased from the plaintiff a Plano binder, with the usual warranty and agreement on the part of the plaintiff, on notice, to put the binder in order if it did not do good work. On account of this purchase, the defendant executed and delivered his two promissory notes to the plaintiff. On the twenty-first of April, 1894, the defendant executed and delivered to W. N. Smith, plaintiff's collecting agent, the note sued upon, and received from him said two promissory notes and the written agreement set out in the answer. Defendant's contention is that said written agreement to put the binder "in good working order before the harvest of 1894" was the sole consideration for the note in suit, and that the plaintiff failed to put the binder in good working order before that harvest, wherefore he says the consideration for the note wholly failed. The plaintiff claims that this note was given in renewal of, and in con-

sideration for the surrender of, said two promissory notes, and therefore contends that the consideration has not failed. Defendant testified as follows: "I quit farming in March, 1895. I had this binder four years,—during the years 1891, 1892, 1893, and 1894. I bought it about three weeks before the harvest of 1891, and cut my grain with it that year and the next year. I also cut my grain with it during the years 1893 and 1894. In 1891 I cut a lot of my neighbor's grain with this machine. I cut for Chris Bannon. I do not know just how much I cut. I never measured it. I do not remember of cutting for any one else that year. I cut for Duffy one year. I cut about ten acres of flax. I cut for Richard McCabe one year. I think it was in 1894. I cut about fifteen acres of oats. I cut for Jas. Brady one year. I do not know how many acres. I cut flax for Pat Duffy. I think it was in 1892. In 1891 I cut of my own grain eighteen or twenty acres, and in 1892 I cut about twenty-five acres of wheat and about twenty or twenty-five acres of oats for myself, and in 1893 I cut about twenty-five or thirty acres of wheat and in 1891 I cut about one hundred acres of flax of my own. All of it with this machine. In cutting the grain, I used the binder part of this machine." He further says: "I did not bind any of the flax. In heavy grain, where it was a little ripe, it seemed as though the packers could not draw the grain to where the needle would come through. It would clog up, and the binder and all would slip along in the grain; and, whenever it would bother like that, it would take quite a little while to get the grain out of the needle, and to try it again and get it ready. In thin grain it would bother right along, and it would not bind the bundles at all in those places where it clogged up. It worked bad enough where the grain would come up right." He also states that he had no other binder during those years, that he still has this one on his farm, and that he cut with it a second time for other parties. He testifies that the plaintiff's agent called a month or two before the harvest of 1894 to fix the machine, that he took

out the old knife and put in a new one, and that, on trying it early in that harvest, it did not work as good as the year before. He says: "It would tangle the grain and clog up, and would hardly bind the bundles at all. If you made it so it would bind as tight as an ordinary binder would, and if the grain was a little green when you came to stack it or shock it, it would not be very easy to handle without losing some of it. It would fall out of the strings. It would not be tied near tight enough, and when you came to thrash the grain you could not tell whether it was loose grain or bound grain." Defendant does not say, nor does it otherwise appear, that he ever made any complaint to the plaintiff or its agent that the machine did not work properly after the new knife was put in, in 1894, notwithstanding his agreement "to render friendly assistance." In the face of this extensive and continuous use of the machine for four years, the defendant says, "Well, I would say it was not worth anything as a binder." Surely this statement is far from conclusive as to the value of the binder, in view of the use that was made of it. The court was warranted in holding that the plaintiff is bound by said agreement; for, if Smith were not authorized to make it, his act in doing so was ratified by the plaintiff's accepting the note, and insisting upon enforcing it, with knowledge of said agreement. The conclusion of the trial court must have been that the agreement constitutes the sole consideration for the note, and that, because of plaintiff's failure to perform the agreement, there is a total failure of consideration, or that a partial failure defeats plaintiff's right to recover anything on the note. Section 3070 of the Code provides as follows: "The want or failure, in whole or in part, of the consideration of a written contract may be shown as a defense, total or partial, except to negotiable paper transferred in good faith and for a valuable consideration, before maturity." This note is a contract in writing. It has not

been transferred, and is therefore open to the defense of failure of consideration in whole or in part. Surely partial failure of consideration would not defeat plaintiff's right to recover to the extent that the consideration had not failed. The court was not warranted in holding that the written agreement was the sole consideration for the note in suit. The evidence tends strongly to show that the surrender of the two notes formed at least a part of the consideration for the note in suit, and, if so, to that extent there was no failure of the consideration. If the written agreement was the sole or partial consideration for the note in suit, the case should have gone to the jury on the question whether plaintiff had failed to perform that agreement. We have seen that the plaintiff did send a man to put the machine in order before the harvest of 1894, that he repaired it, that the defendant used it, and that he made no further complaint or demand as to it. As already said, his statement that the machine was of no value is not conclusive on that point. If the two notes formed a part of the consideration for the note in suit, as we think the evidence strongly tended to show, the plaintiff was entitled to a recovery to the extent of that consideration. We think it should have been left to the jury to determine whether the surrender of the two notes formed a part of the consideration for the one in suit. If the agreement formed all or a part of the consideration, it should have been left to the jury to decide whether the plaintiff had failed to perform that agreement. We conclude that the court erred in directing a verdict for the defendant.—REVERSED.

GRANGER, C. J., not sitting.

DEEMER, J. (dissenting).—The expressed consideration for the note in suit was the plaintiff's promise to put the binder then held by the defendant in good working order before the harvest of 1894. That plaintiff did not comply with his promise is established by the uncontroverted evidence. The

majority hold that, notwithstanding plaintiff's failure, it is entitled to recover something on the note, because the defendant still holds the machine. This view overlooks the fact that the action is on the renewal notes that were given for a consideration expressed in the agreement of April 21st. By the renewal of the notes the plaintiff waived its right to recover on the original notes, and defendant waived any right of action he may have had against the plaintiff for breach of warranty. The parties elected to mutually rescind and abrogate the previous contracts, and to enter into the new engagements evidenced by the notes and contract of April 21st. That they had the right to do this cannot be doubted. If defendant's promise was in consideration of plaintiff's agreement to put the machine in good working order, and plaintiff failed and neglected to comply with its promise, there was an entire failure of consideration. Again, the parties by entering into the new arrangements changed a warranty into a condition or promise, and plaintiff cannot recover on the renewal note while in default. Courts should not construe covenants and agreements independently, where one party may refuse to perform, and still enforce perform-ance by the other, unless there is no other mode of construing the instrument,—unless it clearly appears that such was the deliberate intention of the contracting parties at the time the instrument was executed. *Mecum v. Railroad Co.*, 21 Ill. 533; The evidence in this case clearly shows that the promises and agreements were mutual and dependent, and it would mani-festly be unjust to compel the defendant to perform while plaintiff was in default. In *Beauford v. Patterson*, 63 How. Prac. 81, the defendant gave two notes in settlement of a past-due bill, on the promise of the creditor to return the bill; and it was held that the failure of the creditor to return the bill was a good defense to the new notes. That case followed *Miller v. Ritz*, 3 E. D. Smith, 253. Those cases are based on the familiar doctrine that one party to a contract cannot compel another to perform his part, without showing that

he has performed all its conditions on his part. The case cited is quite like the case at bar. There the defendant had a consideration for the original bill, but he executed the notes in suit on defendant's promise to return the bill, which was not done. By reason of plaintiff's failure to do as he agreed he was not allowed to recover on the notes. Here the defendant executed the renewal notes in consideration of plaintiff's promise to put a certain machine in good working order. This it failed to do, and yet the majority say that it may recover on the notes, and that defendant's remedy is for breach of contract. If this be true, then there are no conditions or agreements that may be made mutual and dependent. In *White v. Day,* 56 Iowa, 248, defendants entered into an agreement to publish a book in consideration of the author's agreement to procure a copyright for the benefit of the publishers. It was held that the author could not maintain an action against the publishers for failure to publish the book in accordance with the contract, without showing that he had copyrighted the book. The court said, in effect, that it was incumbent on plaintiff to do something before it was incumbent on defendants to perform their part; thus giving recognition to the doctrine that, when covenants are mutual and dependent, neither party can compel the other to perform, without showing that he has done all that is required of him. This same doctrine has been applied to the contract of indorsement; and it is said that violation of the agreement made with the indorser as a consideration for his contract, even to a limited degree, justifies the indorser in refusing to pay the note. *Fay & Co. v. James Jenks & Co.,* 93 Mich. 130 (53 N. W. Rep. 163). It is said in argument that the defendant has not rescinded the contract, and for that reason cannot defend against the note. I do not think he was obliged to rescind, and, to my mind, the doctrine of rescission has no application to the case. It is also said that defendant's remedy is to recover damages for plaintiff's failure to perform its part of the contract. This wholly overlooks the

thought that the agreements are mutual, or, if not mutual, that plaintiff's promise constituted the consideration for the notes. Why should we refer back to the original contracts and warranties? The parties have mutually rescinded them, or have substituted new contracts for the old ones, as they had the right to do. Having done this, by what authority do we resurrect them, and hold the defendant liable for the value he received in the machine that was delivered to him? He gave up his contract of warranty when he executed the new note, and plaintiff, in considration thereof and of the renewal notes, agreed to do a certain thing. That it has not done, nor has it made any attempt to do so, and yet it is allowed to recover, notwithstanding it has not performed the agreement on its part. It seems to me that well-settled rules of law call for an affirmance of the judgment.